UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA

      v.                                                             07 CR. 1111 (VM)

RANDY HIGHTOWER,                                    Notice of Motion

                Defendant.
-------------------------------------------------------X

PLEASE TAKE NOTICE, that defendant RANDY HIGHTOWER, by his attorney, Ira D. London, and upon the annexed affirmation and all papers and proceedings in this case, moves this Court, before the Honorable Victor Marrero, United States District Court Judge, at the United States Courthouse, located at 500 Pearl Street, New York, New York for an Order:

1. Suppressing all evidence seized from Randy Hightower, pursuant to Fed. Rules of Crim. P. 12(b)(3)(C), on the grounds that they are the fruit of an unlawful seizure;

2. Granting Randy Hightower such other, further and different relief as this Court may deem just, equitable and proper.

Dated: April 10, 2008
New York, New York

                                                Respectfully submitted,

                                                _____
                                                IRA D. LONDON
                                                Attorney for the Defendant
                                                Randy Hightower
                                                245 Fifth Avenue, Suite 1900
                                                New York, New York 10016
                                                (212) 683-8000

To: United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
ATTN: JEFF ALBERTS, AUSA

Clerk of the Court
United States District Court
Southern District of New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA

    v.                                          07 CR. 1111 (VM)

RANDY HIGHTOWER,

        Defendant.
--------------------------------------------------------X


MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
RANDY HIGHTOWER'S MOTION
TO SUPPRESS EVIDENCE SEIZED FROM HIM


LAW OFFICE OF IRA D. LONDON
245 Fifth Avenue
Suite 1900
New York, New York  10016
(212) 683-8000

Table of Contents

Table of Authorities .................................................................................................................. ii

Preliminary Statement ...............................................................................................................1

Statement of Facts .....................................................................................................................1

POINT I

THE FRUITS OF THE SEARCH OF MR. HIGHTOWER
MUST BE SUPRESSED BECAUSE THEY WERE
OBTAINED WITHOUT THE REASONABLE SUSPICION
REQUIRED UNDER *TERRY v. OHIO* ...................................................................................2

    A.    *Reasonable Suspicion Under* Terry v. Ohio ............................................................2

    B.    *An Anonymous Tip, Without Corroboration, Is Insufficient to*
        *Establish Reasonable Suspicion* .................................................................................3

        1.    *An Anonymous Tip Must Have Sufficient*
            *Indicia of Reliability* ..................................................................................3

        2.    *An Accurate Prediction of a Suspect's Actions May*
            *Provide Sufficient Indicia of Reliability* .......................................................4

    C.    *The Second Circuit Requires An Anonymous Caller to Provide*
        *A Far More Detailed Description Than the One In This Case* ................................4

POINT II

MR. HIGHTOWER WAS SEIZED UNDER THE
MEANING OF THE FOURTH AMENDMENT PRIOR
TO ATTEMPTING TO FLEE AND SO ALL EVIDENCE
RECOVERED FROM HIM MUST BE SUPPRESSED .....................................................6

    A.    *A Seizure Occurs When a Suspect Submits to Authority* .........................................7

    B.    *Flight Alone is Insufficient to Create a Reasonable Suspicion* ...............................9

Conclusion    ...............................................................................................................10

Table of Authorities

Cases:

*Alabama v. White,* 496 U.S. 325 (1990) ................................................................. passim

*Brendlin v. California,* ___ U.S. ___, 127 S.Ct. 2400 (2007) ............................................7

*California v. Hodari D.,* 499 U.S. 621 (1991).....................................................................7

*Florida v. J.L.*, 529 U.S. 266 (2000)..............................................................3, 4, 6, 7, 8

*Florida v. Royer,* 460 U.S. 491 (1983) ...............................................................................7

*Illinois v. Gates*, 462 U.S. 213 (1983) ................................................................................4

*Illinois v. Wardlow,* 528 U.S. 119 (2000).......................................................................8, 9

*Posr v. Doherty*, 944 F.2d 91 (2d Cir. 1991) ......................................................................7

*Terry v. Ohio*, 392 U.S.1 (1968) ............................................................................... passim

*United States v. Baldwin*, 496 F.3d 215 (2d Cir. 2007).................................................8, 9

*United States v. Bayless,* 201 F.3d 116 (2d Cir. 2000) ......................................................2

*United States v. Bold*, 19 F.3d 99 (1994)............................................................................5

*United States v. Fernandez*, 943 F.Supp. 295 (S.D.N.Y. 1996) ....................................5, 6

*United States v. Glover,* 957 F.2d 1004 (2d Cir. 1992) .....................................................2

*United States v. Muhammad*, 463 F.3d 115 (2d Cir. 2006) ...............................................9

*United States v. Rojas*, 906 F.Supp. 120 (E.D.N.Y. 1995)................................................2

*United States v. Sokolow*, 490 U.S. 1 (1989).....................................................................2

*United States v. Swindle,* 407 F.3d 562 (2d Cir. 2005).................................................7, 8

*United States v. Vargas*, 369 F.3d 98 (2d Cir. 2004)....................................................3, 8

*United States v. Walker*, 7 F.3d 26 (2d Cir. 1993).............................................................5

Statutes:

U.S. Const. Amend. IV ....................................................................................................1, 6

Preliminary Statement

As discussed more fully below and in the accompanying affidavit of Randy Hightower, on the evening of November 11, 2007, Mr. Hightower was arrested by New York City police officers responding to an anonymous 911 call reporting a man wearing a black coat, white shirt and blue jeans outside an apartment on the second floor with a gun. Despite neither matching the description nor the location that the anonymous caller gave, the police stopped Mr. Hightower.

The fruits of the subsequent search of Mr. Hightower must be suppressed because they were obtained in violation of his Fourth Amendment right to be free of unreasonable search and seizure. The police's reliance on information from an unknown, and potentially unreliable, source and Mr. Hightower's difference in appearance and location do not provide the requisite reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968).

Additionally, Mr. Hightower had been seized under the definition established in *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Mr. Hightower clearly submitted to police authority by following instructions and raising his hands. Despite his compliance, one of the officers still drew her weapon and aimed it at him, thereby effectively placing him under arrest. This excessive use of force, in conjunction with the lack of reasonable suspicion, warrants the suppression of all evidence illegally seized from Mr. Hightower and any statements he made while in custody.

Statement of Facts

The facts of this case are set forth in the accompanying affidavit of Randy Hightower and will not be repeated herein.

POINT I

THE FRUITS OF THE SEARCH OF MR. HIGHTOWER
MUST BE SUPRESSED BECAUSE THEY WERE
OBTAINED WITHOUT THE REASONABLE
SUSPICION REQUIRED UNDER *TERRY v. OHIO*

A.  *Reasonable Suspicion Under* **Terry v. Ohio**

Because a *Terry* stop is not as intrusive as a full search pursuant to an arrest, an officer does not need probable cause. While the police are entitled under *Terry* to briefly stop a suspect and frisk him, they may only do so based on a reasonable suspicion of criminal activity. This is a more relaxed standard than probable cause:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Alabama v. White,* 496 U.S. 325, 330 (1990). *See also United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("the level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause").

A "reasonable suspicion is determined by the totality of circumstances, and even seemingly innocent conduct may form the basis of a reasonable suspicion." *United States v. Rojas*, 906 F.Supp. 120, 125 (E.D.N.Y. 1995). *See also United States v. Glover,* 957 F.2d 1004, 1010-11 (2d Cir. 1992). In order to make this determination "the court must evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Bayless,* 201 F.3d 116, 133 (2d Cir. 2000) (internal quotation omitted).

**B.**     *An Anonymous Tip, Without Corroboration, Is Insufficient to Establish Reasonable Suspicion*

Unlike a tip from a known informant whose reliability can be gauged, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity."[1]  *Alabama v. White,* 496 U.S. at 329.

**1.**     *An Anonymous Tip Must Have Sufficient Indicia of Reliability*

In *Florida v. J.L.*, 529 U.S. 266 (2000), the Supreme Court held that a "bare-bones" description from an anonymous tipster does not provide reasonable suspicion. The facts of that case mirror those in the instant case in several respects. In *J.L.*, the police received a 911 call reporting a young black male in a plaid shirt and at a particular bus stop was carrying a weapon. The police proceeded to the location and observed some one fitting that description and frisked him, recovering a weapon. *Id.* at 268.

In *J.L.*, the government argued that the tip was sufficiently reliable because the description of the suspect and his location proved were accurate. *Id.* at 271. This argument completely misses the point. The Court held that an accurate description alone does not demonstrate the tipster's knowledge that there is a crime in progress: "The reasonable suspicion at issue here requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 272.

---

[1]  This is a primary distinction between the instant case and *United States v. Vargas*, 369 F.3d 98 (2d Cir. 2004). In that case the police were responding to a tip from a known informant. They had also received similar tips about Vargas in the past. *Id.* at 101. For a more detailed discussion of *Vargas*, see POINT II, supra.

3

### 2. *An Accurate Prediction of a Suspect's Actions May Provide Sufficient Indicia of Reliability*

The Court distinguished its ruling in *White*. There the police matched not only the tipster's description to the suspect, but also her actions. It was the accuracy of the caller's predictions about the suspect's actions that proved sufficient for reasonable suspicion.[2] *White* at 332. At the same time, the Court did warn against relying too heavily on these predictions:

> Knowledge about a person's future movements indicates some familiarity with that person's affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband.

*J.L.*, 529 U.S. at 271. In *White* the specificity of the description and the accuracy of the predictions established reasonable suspicion. However, even then, the Court described it as a "close case." *White*, 496 U.S. at 332.

Unlike *White*, the Court ruled that the stop in *J.L.* was not even close:

> All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If *White* was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line.

*J.L.* at 271.

### C. *The Second Circuit Requires An Anonymous Caller to Provide A Far More Detailed Description Than the One In This Case*

The Second Circuit has permitted an anonymous tip to establish reasonable suspicion, but only based on a far more detailed description than what was corroborated

---

[2] *See also Illinois v. Gates*, 462 U.S. 213, 245 (1983) ("the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted").

4

by Mr. Hightower's arresting officers. Both *United States v. Walker*, 7 F.3d 26 (2d Cir. 1993) and *United States v. Bold*, 19 F.3d 99 (1994), are easily distinguishable. In each case, the description was more detailed and the police had additional corroboration based on the suspicious behavior of the suspect (*Walker*) or the unusual position of the car and the fact that the police were unable to get additional information because the windows were tinted (*Bold*).

This Court has also held that the police must rely on more than a mere description. In *United States v. Fernandez*, 943 F.Supp. 295 (S.D.N.Y. 1996), the police responded to a tip describing an "armed Hispanic man in a white and black jacket" in a park in the Bronx. When the police responded, they did not find anyone matching the description and so stopped some one whose jacket was "similar" to the description.[3] *Id.* at 298. The only distinguishing characteristic – the jacket – was not observed; the Court held that the police did not have reasonable suspicion to stop the defendant.[4]

Mr. Hightower finds himself in the identical position. In the instant case, there was no way to determine the credibility of the anonymous tip and the information was

---

[3] The Court noted that all the people in the park were Hispanic males. *Id.*

[4] *Fernandez* acknowledged that *Bold* was similar but not controlling:

> The only way that *Bold* could control the instant case is if it stood for the proposition that whenever the police receive an anonymous tip involving the possession of a gun by a person of a certain race, they may perform a *Terry* stop on any member of that race. I cannot read it to support such a far-reaching and disturbing proposition. Although the possibility that a person has a gun must be considered in evaluating the totality of the circumstances, it does not permit the police to ignore the Fourth Amendment. They must still possess some "specific articulable facts" that warrant suspicion of the individual being stopped.

*Fernandez* at 299.

5

not sufficiently corroborated by the police when they arrived at the scene.  The bare description of Mr. Hightower lacks even the accuracy of the description in *Florida v. J.L.*  Like the defendant in *Fernandez*, Mr. Hightower was wearing different clothing than the caller's description and he was not at the location the caller indicated.  The caller specifically described the suspect: "on second floor hallway wearing a black coat and blue jeans and a white shirt standing next apartment 2I."  Mr. Hightower was wearing a black shirt and black hooded sweatshirt – not the coat and white shirt described in the call.  Not only was he dressed differently, he was on the street in front of the building and not in the second-floor hallway.  Therefore, the stop did not meet the standard for an arrest under either probable cause or a *Terry* stop based on reasonable suspicion.

POINT II

> MR. HIGHTOWER WAS SEIZED UNDER THE
> MEANING OF THE FOURTH AMENDMENT PRIOR
> TO ATTEMPTING TO FLEE AND SO ALL EVIDENCE
> RECOVERED FROM HIM MUST BE SUPPRESSED

The Supreme Court has defined the seizure of an individual as when "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  Whether or not the suspect reasonably feels free to leave is a question of law that does not rely on the officer's intent:

> [It is] an objective inquiry [that] pointedly eschews the issue of intent and involves an essentially legal assessment of whether the particular circumstances would warrant the belief that a person has be detained.

*Gilles v. Ripicky*, 511 F.3d 239, 245 (2d Cir. 2007) (quoting *United States v. Montilla*, 928 F.2d 583, 588 (2d Cir. 1991)).

A seizure, in the context of a *Terry* stop, does not need to rise to the level of a full arrest. While there is no bright line rule, a determination depends on the reasonableness of the level of intrusion under the totality of the circumstances. *See Florida v. Royer,* 460 U.S. 491, 506 (1983). In *Posr v. Doherty*, 944 F.2d 91 (2d Cir. 1991), the Second Circuit differentiated between the two types of seizures:

> Of course, just as not every encounter between a citizen and the police is a seizure, *see Terry v. Ohio,* 392 U.S. 1, 13 (1968), not every seizure is an arrest. Whether an arrest supportable by probable cause occurs, as distinct from a form of Fourth Amendment intrusion supportable by less than probable cause, depends on the seizure's level of intrusiveness, and on the corresponding degree of justification required to effect each level of intrusiveness. . . . Thus it is not enough to say a person has been *arrested* simply because, due to police action, he reasonably believes he is not free to leave.

*Id.* at 97-98 (internal citations omitted) (emphasis in original).

**A.**    ***A Seizure Occurs When a Suspect Submits to Authority***

*California v. Hodari D.* held that a seizure requires "*either* physical force ...*or*, where that is absent, *submission* to the assertion of authority." 499 U.S. 621, 626 (1991). The Second Circuit has interpreted that to mean "an order to stop must be obeyed or enforced physically to constitute a seizure." *United States v. Swindle,* 407 F.3d 562, 572 (2d Cir. 2005).

*Swindle* further held that a suspect's actions after a seizure may not provide justification for that seizure:[5]

---

[5]    The Supreme Court made this point abundantly clear in *Florida v. J.L.*:

> That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The

7

> The rule is therefore clear that an illegal stop cannot be made legal by incriminating behavior that comes after the suspect is stopped. And if subsequent incriminating events cannot justify an unreasonable stop, then it logically follows that subsequent incriminating events should not be able to justify an unreasonable *order* to stop.

*Swindle* at 568.

Submission to police authority is determined by the individual facts of the case: "Whether conduct constitutes submission to police authority will depend, as does much of the Fourth Amendment analysis, on the totality of the circumstances-the whole picture. *United States v. Baldwin*, 496 F.3d 215, 219 (2d Cir. 2007) (internal citation omitted). *See also Brendlin v. California,* ___ U.S. ___, 127 S.Ct. 2400, 2409 (2007) ("[W]hat may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away"). By obeying the police's commands, Mr. Hightower was clearly submitting to their authority.

In contrast to the situation in *United States v. Vargas*, 369 F.3d 98 (2d Cir. 2004), the police in this case had no basis for a reasonable belief that Mr. Hightower was engaging in illegal activity. In *Vargas*, the Second Circuit made abundantly clear that the reasonable suspicion was based on more than the defendant's flight when approached:

> In this case, the conclusion that the officers had reasonable suspicion is a straightforward one. In light of *both* (i) the specific, detailed and contemporaneous tip that the officers received from their reliable confidential informant regarding Vargas's armed presence at 13 Putnam Heights (and the past tips regarding Vargas's criminal conduct), and (ii) Vargas's evasive flight when

---

> reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.

*Id.* at 271.

8

> Detective Laureano and Trooper Diaz approached him (in a "high crime area" known for having "a lot of drugs [and] a lot of guns"), the officers clearly had reasonable suspicion to detain Vargas.

*Id.* at 101 (emphasis added).

**B.**     ***Flight Alone is Insufficient to Create a Reasonable Suspicion***

Flight may create a reasonable suspicion to warrant a *Terry* stop, provided it is unprovoked:

> An individual approached by an officer who has no reasonable suspicion of wrongdoing may ignore the officer and go about his business, and his refusal to cooperate may not form the basis for his detention. "But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not going about one's business; in fact, it is just the opposite."

*United States v. Muhammad*, 463 F.3d 115, 123 (2d Cir. 2006) (quoting *Illinois v. Wardlow,* 528 U.S. 119 (2000) (internal quotation marks omitted).

Unlike the defendants in both *Muhammad* and *Baldwin*, Mr. Hightower attempted to flee only *after* he was provoked. Prior to the officers' approach, Mr. Hightower was not doing anything that would justify a reasonable suspicion. It was only after one of the officers pointed her gun at Mr. Hightower, effectively placing him under arrest through the use of physical force that he attempted to flee. Based on this interaction, his behavior constituted submission: "it is the nature of the interaction, and not its length, that matters."[6] *Baldwin*, 496 F.3d at 219. Because Mr. Hightower had already been illegally seized, his actions after the seizure and any evidence that was recovered must be suppressed.

---

[6]  While the defendant in *Baldwin* did briefly stop, that was insufficient to qualify as a submission to authority. 496 F.3d at 219. That case is distinguishable because, unlike Mr. Hightower, the defendant in *Baldwin* was not threatened with immediate force prior to his flight.

9

## Conclusion

Therefore, for all the reasons listed above, any evidence obtained as a result of the unconstitutional stop of Mr. Hightower must be suppressed.

Dated: April 10, 2008
New York, New York

                                        Respectfully submitted,

                                        _____
                                        IRA D. LONDON
                                        Attorney for the Defendant
                                        Randy Hightower
                                        245 Fifth Avenue
                                        Suite 1900
                                        New York, New York 10016
                                        (212) 683-8000

To: United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York  10007
ATTN:  JEFF ALBERTS, AUSA

Clerk of the Court
United States District Court
Southern District of New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA

    v.                                                                   07 CR. 1111 (VM)

RANDY HIGHTOWER,                              **Affidavit**

                      Defendant.
------------------------------------------------------X

State of New York       )
                              ) ss.:
County of Kings         )

        RANDY HIGHTOWER, being duly sworn, deposes and says:

        1.     I am the defendant in the above-captioned case in which I have been charged with possessing a firearm after having been previously convicted of a crime punishable by a term of imprisonment exceeding one year (18 U.S.C. § 922(g)(1)) ("felon in possession").

        2.     This affidavit is submitted in support of my motion to suppress the evidence that the Government alleges was recovered from my jacket and from the ground near the scene of my arrest, 1020 Summit Avenue, Bronx, New York.

        3.     As will be discussed in greater detail below, my arrest and the search of my person on November 11, 2007, were effected without a warrant, without consent, and without reasonable suspicion or probable cause. The property that was subsequently recovered by the police in this case must be suppressed due to the unlawful arrest and search.

**The Illegal Arrest and Search.**

4. At approximately 6:15 in the evening on November 11, 2007, I was standing on the sidewalk in front of 1020 Summit Avenue. 1020 Summit Avenue's main entrance is a hallway that leads to an interior courtyard that one must enter prior to entering the building. I was standing to the right of the entrance to the courtyard on the sidewalk near the street.

5. I was wearing a black hooded sweatshirt, a black t-shirt and a pair of blue jeans and I was standing with my hands in my pockets. At no time did I behave in any way that might have been perceived as being suspicious or threatening.

6. As I was standing on the public sidewalk, I was approached by two officers who ordered me to remove my hands from my pockets and raise them. The female officer then asked me what I was doing there. I tried to explain that my grandmother lived across the street.

7. Before I could fully explain, the female officer demanded that I freeze and put my hands up. She also drew her weapon and aimed it at me. I was confused because my hands were already up and I became fearful for my life.

8. At that point I ran away from the officers and toward the entrance to the building, allegedly dropping my cell phone and a handgun.

9. The police officers chased me and one of them attempted to handcuff me. At that point, I again broke away and was detained by a third officer that I had not seen previously. According to the police report, I allegedly stated that I was "not going back." After I was illegally arrested, I allegedly made a number of other statements.

## CONCLUSION

Based upon the facts alleged above and the accompanying memorandum of law submitted by my attorney, I respectfully request that (1) the weapon and all other evidence recovered by the police on November 11, 2007, be suppressed, and (2) the statements attributable to me be suppressed. In the alternative, I respectfully request an evidentiary hearing to address the issues raised by the instant motion to suppress.

Dated:   Brooklyn, New York
         April 10, 2008

                                                    *R. Hightower*
                                                    Randy Hightower

Sworn to before me this
10 day of April, 2008.

_____
Notary Public

EILEEN M. PENTA
NOTARY PUBLIC, State of New York
Reg. No. 01PE6079403
Qualified in New York County
My Commission Expires 8/26/10