

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

May 2, 2008

**BY ECF**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 640
New York, New York 10007

      Re:    United States v. Randy Hightower
              07 Cr. 1111 (VM)

Dear Judge Marrero:

      The Government respectfully submits this letter in response to defendant Randy Hightower's motion to suppress physical evidence and statements obtained by officers of the New York City Police Department ("NYPD") in connection with his November 11, 2007 arrest for being a felon in possession of a firearm.  The Court has set June 27, 2008 as the date for a hearing on this motion, if one is necessary.  The Court should deny the defendant's motion to suppress without an evidentiary hearing because the defendant has failed to make a showing of facts which, if proved, would require the granting of relief.  Should the Court determine that a hearing is necessary, then the Government respectfully reserves the right to submit post-hearing briefing regarding the factual and legal issues that arise during the hearing.

### BACKGROUND

      The defendant is charged in a one-count Indictment with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). (A copy of the Indictment is attached as Exhibit A.)   The background of this case is set forth in the Complaint filed on November 15, 2007 (A copy of the Complaint is attached as Exhibit B.)

      According to the Complaint, at approximately 6:19 p.m. on November 11, 2007, an NYPD dispatcher notified two NYPD officers (collectively, the "Officers") that a 911 caller had reported seeing a black male wearing a black coat, blue jeans and a white shirt who had a gun and was near apartment 2I at 1020 Summit Avenue. (Compl. ¶ 2(a).)  This address is located in the Bronx, New York. (*Id.*)  The Officers drove to 1020 Summit Avenue and saw Randy Hightower, the defendant, a black male wearing a black coat and blue jeans. (*Id.* ¶ 2(b).)  He had his hands in his pockets. (*Id.*)  One of the Officers told Hightower to remove his hands from his pockets. (*Id.*)  Hightower removed his hands from his pockets, but he kept moving his hands and appeared to start putting his hands back into his pockets. (*Id.*)  At that point one of the

The Honorable Victor Marrero
May 2, 2008
Page 2 of 7

Officers drew a firearm and pointed it at Hightower. (*Id.*) Hightower then ran back into 1020 Summit Avenue, dropping a cell phone and a pistol as he ran. (*Id.*) One of the Officers picked up the pistol, subsequently identified as a Walther semi-automatic pistol. (*Id.*)

The Officers then followed Hightower into the lobby of 1020 Summit Avenue. (*Id.* ¶ 2(c).) In the lobby, one of the Officer attempted to handcuff Hightower, but after the handcuff was placed on one of his arms, he stated that he was "not going back" and ran out of 1020 Summit Avenue. (*Id.*) Shortly thereafter Hightower was detained by another officer of the NYPD. (*Id.* ¶ 2(d).)

Hightower asserts that when he was approached by the Officers he did not behave in any way that might have been perceived as suspicious or threatening. (Hightower Aff. ¶ 5.) He states that he attempted to explain that he was near that building because his grandmother lived across the street. (Hightower Aff. ¶ 6.) He concedes that after he was told to freeze and observed an officer point a firearm at him, he "ran away from the officers and toward the entrance to the building." (Hightower Aff. ¶¶ 7-8.) He further concedes that after an officer attempted to handcuff him, he "broke away" and only then was "detained by a third officer." (Hightower Aff. ¶ 9.) He does not deny that he dropped the firearm that was recovered by one of the Officers.

**ARGUMENT**

The defendant's motion to suppress evidence based on an alleged seizure in violation of the Fourth Amendment should be denied without a motion because undisputed facts show that by the time that the defendant was seized, the police had probable cause to arrest him. Moreover, should the Court determine that a hearing is necessary in this case, evidence presented at that hearing would show that the Officers' initial attempt to stop the defendant–which was not a seizure under the Fourth Amendment–would have been consistent with the Fourth Amendment requirements if it had been a seizure.

A.  **A Hearing is Not Necessary Because Undisputed Facts Establish That The Officers Had Probable Cause When They Seized Hightower.**

   1.  A defendant who temporarily obeys an order to stop, then flees, is not seized under the Fourth Amendment.

The Fourth Amendment is not implicated in every encounter between citizens and police officers; it only becomes relevant if a person is "seized." "Only when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [the court] conclude that a 'seizure' has occurred." *Terry* v. *Ohio*, 392 U.S. 1, 19 n.16 (1968). An *attempted* stop is not a seizure. *County of Sacramento* v. *Lewis*, 523 U.S. 833, 844 (1998) ("a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment"). If the police make a show of authority but the suspect does not submit, there is no seizure. *See California* v. *Hodari D.*, 499 U.S. 621, 626 (1991) (arrest requires "*either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority") (emphasis in original). An order, accordingly, "must be obeyed or enforced physically to constitute a seizure." *United States v. Swindle*, 407 F.3d 562, 566 (2d Cir. 2005).

The Honorable Victor Marrero
May 2, 2008
Page 3 of 7

Because "'there is no seizure without actual submission,'" "to comply with an order to stop-and thus to become seized-a suspect must do more than halt temporarily; he must submit to police authority." *United States v. Baldwin*, 496 F.3d 215, 218 (2d Cir. 2007) (quoting *Brendlin v. California,* 127 S.Ct. 2400, 2405 (2007)). In *Baldwin,* the Second Circuit joined several other circuits in holding that a defendant is not seized if he temporarily obeys an order to stop, but flees immediately thereafter. *Baldwin*, 496 F.3d at 218 (citing *United States v. Washington*, 12 F.3d 1128, 1132 (D.C. Cir.1994) ("[Defendant] initially stopped, but he drove off quickly before Officer Hemphill even reached the car. Because [defendant] did not submit to Hemphill's order, he was not seized ...."); *United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000) ("Even if Valentine paused for a few moments and gave his name, he did not submit in any realistic sense to the officers' show of authority, and therefore there was no seizure until Officer Woodard grabbed him."); *United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir.1994) ("Hernandez requests we find he submitted to authority and was seized, despite his subsequent flight, merely because he hesitated for a moment and made direct eye contact with Sadar. We decline to hold these actions sufficient to constitute submission to authority."))

    2.    The defendant was not seized when he was ordered to stop at gunpoint, because he fled after temporarily stopping.

In *Baldwin*, the Second Circuit held that no seizure occurred when the defendant pulled his car over in response to officers turning on the siren and overhead lights of their vehicle, but then drove away as the officers approached the stopped car. 496 F.3d at 217. The Second Circuit's holding in *Baldwin* clearly controls in this case. Hightower temporarily raising his hands in response to a police order and then fleeing is no more a submission to authority than the defendant stopping his car in *Baldwin*.

The defendant's attempt to distinguish *Baldwin* by arguing that "unlike Mr. Hightower, the defendant in *Baldwin* was not threatened with immediate force prior to his flight" is inconsistent with the Second Circuit's reasoning in *Baldwin*. (Br. at 9 n.6.) The purported use of force to which the defendant refers is "one of the officers point[ing] her gun" at the defendant. (*Id.* at 9.) However, the police also "drew their weapons" in *Baldwin*. 496 F.3d at 217. Here, as in *Baldwin*, the issue is not merely whether the police threatened to use force in a manner that would make a "reasonable person . . . believe that he was not free to leave." *Id.* at 219 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). This "states a *necessary*, but not a *sufficient*, condition for seizure." *Id.* (emphasis in original) (quoting *Hodari D.*, 499 U.S. at 628). "A reasonable person" standing in Hightower's place "would have felt bound to stop, and having stopped and stayed, would be able to argue suppression on the ground of a baseless seizure." *Id.* Because Hightower did not submit to the Officers' show of authority when they ordered him to stop at gunpoint, and was not seized, there is no basis for arguing that evidence should be suppressed on the basis of that show of authority.

    3.    The Officers had probable cause to arrest the defendant when they arrested him.

As set forth above, when the officers attempted to stop the defendant prior to his flight, no seizure occurred. The police officers seized the defendant for the first time when they arrested him after he fled by running out of 1020 Summit Avenue. By that time, the Officers had seen the defendant drop a firearm and had recovered that firearm. This alone would justify "a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States* v. *Patrick*, 899 F.2d 169, 171 (2d Cir. 1990). Because the

The Honorable Victor Marrero
May 2, 2008
Page 4 of 5

defendant does not dispute that the officers observed him drop a firearm, the Court should deny his motion for suppression without a hearing.

**APPLICABLE LAW SHOULD THE COURT ORDER A HEARING
CONCERNING THE ATTEMPTED *TERRY* STOP**

As set forth above, the Court should deny the defendant's motion without a hearing because the Officers' attempt to stop the defendants was not a seizure under the Fourth Amendment. However, should the Court determine that a hearing is necessary, the applicable law would concern whether there was reasonable suspicion supporting the initial, attempted *Terry* stop of the defendant.

It is well-settled that "[u]nder *Terry* v. *Ohio*, 392 U.S. 1 (1968), police may briefly detain an individual for questioning if they have a reasonable suspicion that criminal activity is afoot." *United States* v. *Elmore*, 482 F.3d 172, 178 (2d Cir. 2007). To justify a *Terry* stop, "[p]olice 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [on a citizen's liberty interest].'" *Elmore*, 482 F.3d at 178-79 (alterations in original) (quoting *Terry*, 392 U.S. at 21).

"Reasonable suspicion" is measured by an objective test; "the 'actual motivations of the individual officers involved' in the stop 'play no role' in the analysis." *Holeman* v. *City of New London*, 425 F.3d 184, 190 (2d Cir. 2005) (quoting *Whren* v. *United States*, 517 U.S. 806, 813 (1996)). When assessing whether an officer's suspicion "that criminal activity is afoot," *Elmore*, 482 F.3d at 178, was objectively reasonable, a court must consider the "totality of the circumstances" facing the officer at the time of the stop. *Id.* at 179. In that analysis, factors that by themselves suggest innocent conduct may add up to reasonable suspicion when viewed as a whole. *See United States* v. *Arvizu*, 534 U.S. 266, 274-75 (2002); *see also United States* v. *Villegas*, 928 F.2d 512, 516 (2d Cir. 1991) ("Conduct as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity.").

Reasonable suspicion is measured from the objective perspective of a trained and experienced law enforcement officer. That is because the reasonable suspicion analysis "does not deal with hard certainties, but with probabilities," and properly takes into account that trained law enforcement agents may make observations and draw conclusions that go beyond the capacity of a lay person. *Cortez*, 449 U.S. at 418; *United States* v. *McCargo*, 464 F.3d 192, 197 (2d Cir. 2006). "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois* v. *Wardlow*, 528 U.S. 119, 124 (2000).

The threshold for reasonable suspicion "falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274; *Elmore*, 482 F.3d at 179 (same). Specifically, "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause [and] can arise from information that is less reliable than that required to show probable cause." *Alabama* v. *White*, 496 U.S. 325, 330 (1990). It may be based on any of a variety of factors, including an individual's presence in a high-crime neighborhood, "nervous, evasive behavior," and "unprovoked flight upon noticing the police." *Wardlow*, 528 U.S. at 124; *United States* v.

The Honorable Victor Marrero
May 2, 2008
Page 5 of 5

*Muhammad*, 463 F.3d 115, 121 (2d Cir. 2007) ("When the noticed presence of officers provokes a suspect's headlong flight in a high crime area, the officers are justified in suspecting criminal activity on the part of the suspect and a *Terry* stop is warranted."); *United States* v. *Welbeck*, 145 F.3d 493, 498 (2d Cir. 1998) (stop justified by, *inter alia*, defendant's "evident alarm and evasive behavior" after being alerted to police presence).  In short, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 125.

Finally, the use of a firearm by police officers for safety purposes does not transform a *Terry* stop into an arrest, or otherwise increase the requisite factual basis for a finding that police officers had reasonable suspicion.  A display "of [unholstered] guns by the police . . . does not automatically convert a stop into an arrest." *United States* v. *Nargi*, 732 F.2d 1102, 1106 (2d Cir. 1985).  Although under "'ordinary circumstances, drawing weapons and using handcuffs are not part of a *Terry* stop[,] intrusive and aggressive police conduct' is not an arrest 'when it is a reasonable response to legitimate safety concerns on the part of the investigating officers.'" *Vargas*, 369 F.3d at 102 (quoting *United States* v. *Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001) (alterations in original).

## CONCLUSION

For the foregoing reasons, the Government submits that the defendant has not put forth any facts demonstrating that the Officers lacked probable cause at the time of his arrest.  Accordingly, both the gun and the defendant's post arrest statements are admissible and the defendant's suppression motion should be denied without a hearing.  Should the Court determine that a hearing is necessary, then the Government respectfully reserves the right to submit post-hearing briefing regarding the factual and legal issues that arise during the hearing.

    Respectfully submitted,

    MICHAEL J. GARCIA
    United States Attorney

By:   s/ Jeff Alberts
    Jeff Alberts
    Assistant United States Attorney
    (212) 637-1038

cc:   Ira D. London, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA         :     INDICTMENT

    - v. -                      :     07 Cr. _____

RANDY HIGHTOWER,

        Defendant.          :

- - - - - - - - - - - - - - - - x

07CRIM1111

COUNT ONE

The Grand Jury charges:

On or about November 11, 2007, in the Southern District of New York and elsewhere, RANDY HIGHTOWER, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, to wit, a conviction on or about April 13, 2005, in New York Supreme Court, Bronx County, of attempted robbery in the second degree, a violation of New York Penal Law 160.10, a Class D felony, unlawfully, willfully, and knowingly, did possess in and affecting commerce, a firearm, to wit, a Walther semi-automatic pistol, which previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(g)(1).)

_____    _____
FOREPERSON                   MICHAEL J. GARCIA
                             United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

RANDY HIGHTOWER,

Defendant.

INDICTMENT

07 Cr.

(18 U.S.C. § 922(g)(1)))

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

Foreperson.

*Post 11/27*

*RC*
*12/5/07*

*Indictment filed, case assigned to Judge Manero.*

*F. Maas, USMJ*

07 MAG 1909

Approved: _____
          JEFF ALBERTS
          Assistant United States Attorney

Before:   HONORABLE DEBRA FREEMAN
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :     SEALED COMPLAINT

          - v. -                  :     Violation of
                                        18 U.S.C. § 922(g)(1)

RANDY HIGHTOWER,                  :     COUNTY OF OFFENSE:
                                        BRONX
               Defendant.         :

- - - - - - - - - - - - - - - - -x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          EDGARDO BARBOT, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), Firearms Suppression Division, and he charges as follows:

                         Count One

          On or about November 11, 2007, in the Southern District of New York and elsewhere, RANDY HIGHTOWER, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, to wit, a conviction on or about April 13, 2005, in Bronx County Supreme Court, of attempted robbery in the second degree, a violation of New York Penal Law 160.10, a Class D felony, unlawfully, willfully, and knowingly, did possess in and affecting commerce, a firearm, to wit, a Walter semi-automatic pistol, which previously had been shipped and transported in interstate and foreign commerce.

          (Title 18, United States Code, Section 922(g)(1).)

          The bases for my knowledge and for the foregoing charge, is, in part, as follows:

          1.   I am a Detective in the Firearms Suppression Division of the New York City Police Department ("NYPD"), and I have been personally involved in the investigation of this matter.  This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and

my conversations with other law enforcement officers. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2. I have spoken with an officer of the NYPD ("Officer 1"), who informed me, in substance and in part, of the following:

a. On or about November 11, 2007, at approximately 6:19 p.m., Officer 1 received a radio run from a NYPD dispatcher stating that a caller had stated that a black male wearing a black coat, blue jeans and a white shirt had a gun and was near apartment 2I at 1020 Summit Avenue. This address is located in the Bronx, New York.

b. Officer 1 and another officer of the NYPD ("Officer 2") drove to 1020 Summit Avenue and saw a black male wearing a black coat and blue jeans, subsequently identified as RANDY HIGHTOWER, the defendant, in front of 1020 Summit Avenue. HIGHTOWER had his hands in his pockets. Officer 1 and Officer 2 exited their vehicle and approached HIGHTOWER. Officer 2 told HIGHTOWER to take his hands from his pockets. HIGHTOWER removed his hands from his pockets, but kept moving his hands and appeared to start putting his hands back into his pockets. Officer 1 then drew a firearm and pointed it at HIGHTOWER. HIGHTOWER ran back into 1020 Summit Avenue. As HIGHTOWER ran back into the building, he dropped a cell phone and a pistol, subsequently identified as a Walter semi-automatic pistol. Officer 1 then picked up the pistol.

c. Officer 1 and Officer 2 then followed HIGHTOWER into the lobby of 1020 Summit Avenue. In the lobby, Officer 1 attempted to handcuff HIGHTOWER, but after the handcuff was placed on one of HIGHTOWER's arms, HIGHTOWER stated that he was "not going back" and ran out of 1020 Summit Avenue.

d. Officer 1 ran after HIGHTOWER and, shortly thereafter observed another officer of the NYPD ("Officer 3") detain HIGHTOWER.

3. After consultation with an ATF agent knowledgeable about the manufacture of firearms, I have confirmed that Walter- the manufacturer of the weapon at issue here – has never manufactured firearms within the State of New York.

4.      I have reviewed criminal history records pertaining to RANDY HIGHTOWER, the defendant, which reflect that HIGHTOWER was convicted on or about April 13, 2005, in Bronx County Supreme Court, of attempted robbery in the second degree, a violation of New York Penal Law 160.10, a Class D felony.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of RANDY HIGHTOWER, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

Det. E. Barbot
EDGARDO BARBOT
Police Officer
New York Police Department

NOV 15 2007

Sworn to before me this
   day of November, 2007

HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK