Randy Hightower 60558-054
MDC P.O. Box 329002
Brooklyn, N.Y. 11232

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-26-08

ORIGINAL

Dear, Judge Victor Marrero            8-12-08
                                      07 Cr 1111

    I, Randy Hightower, would like to inform the court that I've been recieving ineffective counsel from my present attorney, Mr. Ira D. London, and I would like to be appointed a new attorney for representation. Mr. London hasn't done what I've asked of him, also I haven't seen him or spoken to him since June 27th, 2008. On June, 27th, 2008, I asked him to appeal the courts decision to deny me a suppression hearing, an this still haven't been done, nor did he try to explain to the court that I "was" seized" before my attempt to flee, and that my flight manifested from unreasonable governmental intrusion, which was overbearing and harrassing police conduct. By constitutional law im entitled to be free from this kind of intrusion. At the time the officer's drew their weapons against me, they had no reasonable sup suspicion to believe I was armed, dangerous, or posed any threat to them or anyone else. Terry v. Ohio, 329 392 U.S.1 (1968) states that a seizure requires "either" physical force, or where that is absent, submission to the assertion of authority, and Brendlin v. California __ U.S. __, 127 S.Ct. 2400 (2007) states that "what may amount to submission depends on what a person was doing before the show of authority: A fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." It is clear that when I noticed the officers approaching me I did not run away, instead I submitted to their authority and stayed put, therefore I was seized. Also, when the officer's ordered me to remove my hands from my pockets and raise them, I ~~was~~ submitted to their authority by obeying their orders, therefore I was seized. Baldwin v. United States 496 F.3d 215 (2d cir. 2007) states that "it is the nature of the interaction, and not it's length, that matters. My Case is distinguishable from Muhammad's, 463

F.3d 115 (2d Cir. 2006) due to the facts that Muhammads flight manifested from the noticed presence of officers, where as I attempted to flee during ~~the~~ my detention, which manifested from me being threatened, by the officers (at gunpoint), of immediate danger. Also I was held in detention, Muhammad was not; I obeyed order from the officers, Muhammad did not. Although grounds for a stop may be based on events that occur after the order to stop is given; Swindle 407 F.3d 562 (2d Cir. 2005) states that "unreasonable stops and unreasonable orders to stop are both abuses of police power an we (2d Circut) see no principled basis for prohibiting the former but not the other. Therefore, if it is a fact that the Fourth Amendment is designed to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals, then my rights have been violated and a suppression hearing should be granted. Your honor, please appoint me a new attorney that can properly represent me, and also use this information to consider a suppression hearing

Sincerely, Mr. Hightower

Terry v. Ohio 329 U.S. 1 (1968)
The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in the light of the particular circumstances; in making that assessment it is imperative that the facts be judged against an objective standard, namely, whether the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate, and anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than irrelevant inarticulate hunches



Judge Victor Marrero                                      8-17-08

    Your Honor, Terry v. Ohio 392 U.S. 1 (1968) states that an officer "must" first have "constitutional grounds" to insist on an "encounter", to make a forcible stop. Any person, including police men, is at liberty to aviod a person he considers dangerous. If and when a police man has a right instead to disarm such a person for his own protection, He must first have a right not to aviod him but to be in his presence.

    The Dispatcher did not have any objective reason to believe the tip was sufficiently reliable to justify a proportionate police response in the first place. Therefore, leaving the arresting officers without reason to be in my presence, to make a Terry stop, to believe I was armed and presently dangerous, or involved in any criminal activity whatsoever.

    It's obvious that the officer's had already assumed and mentally placed me guilty of being involved in criminal activity, without any sufficient facts that would support reasonable suspicion for my detention.

    By the officers ordering me to remove my hands from my pockets during my detention, that clearly warranted me, and would warrant any ordinary citizen to believe I/they wasn't free to refuse cooperation and walk away. (If I wasn't free to something as small as having my hands in my pockets on a cold night, during my detention; then how could I believe, or feel I was free to walk away from the detention which is more of a risk?)

    Also, it is clear that the officers, without sufficient facts, considered me to be, potentionally dangerous. Now, any well trained officer with reasonable suspicion to believe me to be armed and potentionally dangerous to his partner and himself, his first and main objective would be to frisk me; to ensure his and his partner's safety during the detention.

Terry v. Ohio 392 U.S. 1 (1968), states that where such a stop is reasonable, the right to frisk "Must" be "immediate" and "automatic" if the reason for the stop is, as here, an articulable suspicion of a crime of violence. So even if these officers would have had reasonable suspicion to believe I was armed and potentionally dangerous, which they did not, their action in dealing with the situation would none the less be found to be unprofessional and inappropriate police conduct. By law, I should have been protected by the Fourth Amendment, from the conduct of these officer's which was clearly overbearing and harrassing. I really feel I should be granted a suppression hearing to show the officers violated My right (Fourth Amendment)! Please consider this!

Sincerely,
Mr. Hightower
Randy Hightower 60558-054
M.D.C P.O Box 329002
Brooklyn, N.Y 11232